# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Blackberry Fund, LLC, Ridgeway Fund, LLC, Woodcreek Trading, LLC, Umbrail Fund, LLC Zurichsee Trading, LLC, Dent-Blanche Fund, LLC and Plum Grove Trading, LLC, ) ) ) ) | CIVIL ACTION |
| Petitioners, | |
| v. | |
| United States of America, Department of the Treasury – Internal Revenue Service, | SUIT NO._____ |
| Respondent. | |

## PETITION TO QUASH SUMMONSES

Petitioners Blackberry Fund, LLC, Ridgeway Fund, LLC, Woodcreek Trading, LLC, Umbrail Fund, LLC, Zurichsee Trading, LLC, Dent-Blanche Fund, LLC and Plum Grove Trading, LLC, by their undersigned attorneys, request pursuant to 26 U.S.C. § 7609 that this Court grant their Petition to Quash Summonses issued by the United States of America, Department of the Treasury - Internal Revenue Service and in support of their petition state:

### PARTIES

1. Blackberry Fund, LLC is an Illinois limited liability company that primarily does business in Brazil.

2. Ridgeway Fund, LLC is an Illinois limited liability company that primarily does business in Brazil. Ridgeway is the holding company of Woodcreek Trading, LLC.

3. Woodcreek Trading, LLC is an Illinois limited liability company that primarily does business in Brazil.

910733v.1

4. Umbrail Fund, LLC is an Illinois limited liability company that primarily does business in Brazil.

5. Zurichsee Trading, LLC is an Illinois limited liability company that primarily does business in Brazil.

6. Dent-Blanche Fund, LLC is an Illinois limited liability company that primarily does business in Brazil.

7. Plum Grove Trading, LLC is an Illinois limited liability company that primarily does business in Brazil.

8. Jetstream Business Limited is the tax matter partner for all petitioners.

9. Respondent United States of America, Department of the Treasury - Internal Revenue Service (IRS) is tasked with helping compliant taxpayers with the tax laws and ensuring that non-compliant taxpayers pay their fair shares. Internal Revenue Manual (IRM) 1.1.1.1(2). The IRS's mission is to "[p]rovide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all." IRM 1.1.1.1(1).

10. This civil action against the United States is to quash IRS summonses issued to Jonathan K. Greer, Robert S. Greer, Thomas H. Turner and Mark Hebert (the "Taxpayers").

11. The summonses issued to the Taxpayers are part of a nationwide harassment effort on the part of the IRS which already has spawned litigation pursuant to the Freedom of Information Act (FOIA), *Kozacky & Weitzel, P.C. v. United States of America,* case No. 2007 C 2246 (the "FOIA Complaint"), a petition to quash Formal Document Requests (FDRs), *Good Karma, LLC, et al. v. United States*, No. 07-cv-2697 (N.D. Ill.), similar petitions

2

910733v.1

to quash summonses in the Central District of California, District of Colorado, Middle District of Florida, Northern District of Georgia, Northern District of Illinois, District of Massachusetts, Western District of Michigan, District of New Jersey, Western District of North Carolina, Middle District of Pennsylvania, Eastern District of Pennsylvania, Eastern District of Tennessee and Southern District of Texas and, most recently, litigation in the United States Tax Court challenging the issuance of Final Partnership Administrative Adjustments (FPAAs) issued similarly-situated entities.

12. The IRS has summoned the Taxpayers to appear for examinations on March 3, 2008, March 4, 2008 and March 11, 2008. The summonses (true and correct copies of which are attached hereto and incorporated herein as Group Exhibit A) also direct the Taxpayers to produce the following documents:

- All documents regarding legal advice or tax advice in connection with your participation in [named trading entities] AND [named holding entities], and/or its activities, the legal or tax consequences of your participation, and/or tax return positions to be taken by [*sic*] or in connection with your participation in [named trading entities] AND [named holding entities], and/or its activities

- All documents discussing or purporting to describe the anticipated tax benefits, or the lack thereof, of [named trading entities] AND [named holding entities], and/or its activities, including but not limited to documents relating to advice that recommended that you should not participate in [named trading entities] AND [named holding entities], and/or its activities or claim any tax benefits with respect thereto.

- All engagement letters, representation letters, agreements, and correspondence relating to legal, professional, management, accounting or tax advice relating to [named trading entities] AND [named holding entities], and/or its activities.

- All documents, including but not limited to engagement letters, representation letters, agreements, invoices, billing records, fee allocations, and correspondence related to any fees for legal, professional, management, accounting and tax advice and assistance incurred by you and/or any entity controlled by you in connection with [named trading entities] AND [named holding entities], and/or its activities.

- All minutes, notes, correspondence, emails, calendar entries, and other recordings relating to or reflecting meetings, conferences and telephone conversations in which [named trading entities] AND [named holding entities], and/or its activities was discussed.

- All documents showing payment of any funds, including but not limited to fees, paid or received by any party in connection with [named trading entities] AND [named holding entities], and/or its activities.

- All promissory notes between [summoned taxpayer] and [named trading entities] AND [named holding entities].

- All documents showing contributions to the [holding entity], including but not limited to notes, cancelled checks, wire transfers, brokerage statements, etc.

- All agreements with [holding entity], including but not limited to membership interest purchase agreements and subscription agreements.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 26 U.S.C. § 7609(h) because the Taxpayers, the individuals summoned, reside or are found in this judicial district.

## BACKGROUND FACTS

14. Petitioners are in the business of consumer receivable management and collection, partnering with creditors for the servicing and collection of semi-performing and performing consumer receivables in a trillion-dollar global industry that is driven by increasing levels of consumer debt, increasing defaults of the underlying receivables and increasing utilization of third-party providers to collect such receivables. In addition, petitioners note they are among the first of their kind to establish such a business in Brazil. Petitioners have used the structure and prototypes of various public companies in the United States already engaged in the industry to ensure that their business operates profitably.

910733v.1

15. Based upon the IRS' assertion that petitioners engaged in "tax shelters" and "abusive transactions" for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations, the IRS launched an audit of each petitioner (and several other entities) covering certain tax years. The instant summonses relate to 2004.

16. Pursuant to the audit, the IRS propounded a series of Information Document Requests (IDRs), IRS Form 4564, upon petitioners and similarly situated petitioners throughout the country.

17. Beginning in 2006, multiple broad IDRs, often requesting duplicative or non-existent documents, were propounded upon petitioners and similarly-situated petitioners.

18. Despite the number of IDRs propounded upon them, petitioners made every effort to comply with the IRS's requests.

19. Apart from complying with the IDRs, attorneys for petitioners remained in continuous communication with numerous IRS agents, including Larry Weinger, Piotr Kleszcz, Thomas Pike, Susan White and Ray Tabor. Petitioners were required to submit identical information to each IRS agent and often required to resubmit information repeatedly to the same IRS agent.

20. In the event petitioners were unable or unwilling to comply with certain requests in response to the IDRs, they lodged specific objections, referred the IRS to previously submitted documentation, or pledged to provide the documents when they became available.

21. Additionally, when the IRS requested documents too numerous or burdensome for total compliance, petitioners suggested methods for ensuring compliance, including "sampling" the documents, making their records available for on-site inspection, or offering to fly IRS agents to Brazil to inspect the original documents. Petitioners also made it

5

910733v.1

known to the IRS that they remained committed to satisfying their responsibilities in connection with these audits.

22. Notwithstanding petitioners' substantial and costly efforts to comply with the IDRs, in 2007 the IRS began propounding FDRs under 26 U.S.C. § 982 upon petitioners and similarly situated taxpayers throughout the country.

23. As justification for the FDRs, the IRS alleged that petitioners did not provide all of the requested information described in previously submitted IDRs. The FDRs are currently the subject of a petition to quash pending in the Northern District of Illinois (*see* paragraph 11, *supra*).

24. Despite the issuance of the FDRs, the IRS continued to propound IDRs upon petitioners.

25. In addition to IDRs and FDRs, the IRS issued letters to numerous taxpayers around the country due to their purported participation in "tax shelter" or "abusive" transactions relating to petitioners and other petitioners in related actions filed throughout the country.

26. To determine the source of the accusations directed against these taxpayers, Kozacky & Weitzel, P.C. submitted FOIA requests.

27. After the IRS failed to comply with counsel's FOIA requests, counsel for petitioners filed the FOIA Complaint (*see* paragraph 11, *supra*). Initially, in its answer, the IRS asserted that it lacked knowledge or information concerning "internal memoranda, administrative orders or any other agency documents that may indicate reasons why Rodney R. and Heidi M. Kirby[, similarly-situated taxpayers,] were accused of [tax shelter or abusive] transactions" but apparently now the IRS asserts that the document it knew nothing about was part of its

deliberative process.  *Compare* Answer, ¶ 13 *with* Declaration of Melissa C. Quale, ¶¶ 13-17, *filed in Kozacky & Weitzel, P.C.*, *supra* paragraph 11.

## THE SUMMONSES

28. On January 18, 2008 and January 24, 2008, IRS agents Pike, Tabor, White and Mario Portanova issued summonses directed at the Taxpayers relating to petitioners.

29. The summonses issued despite the existence of petitions to quash virtually identical summonses currently being litigated throughout the United States (*see* paragraph 11, *supra*).

30. The litigation is at various stages—from initial briefing to a pending appeal—but all remains ongoing.  Petitioners note that an evidentiary hearing, during which similarly-situated petitioners will have the first opportunity to examine IRS issuing agents has been scheduled for February 21, 2008 in the Middle District of Florida.  *See Ironwood Trading, LLC, et al. v. United States,* 8:07-mc-59 (M.D. Fla.), *docket #38*.

31. IRS summonses must be quashed unless the IRS establishes that:  1) the investigation is being conducted for a legitimate purpose; 2) the inquiry may be relevant to that purpose; 3) the information sought is not already in the IRS's possession **and** 4) the administrative steps required by the Internal Revenue Code (IRC) have been followed.  *United States v. Powell*, 379 U.S. 48, 57-58 (1964).  The IRS has failed to and cannot establish all four requirements.

### *Legitimate Purpose*

32. The investigation is not being conducted for a legitimate purpose.  Due process, the Internal Revenue Code, the Internal Revenue Manual and Treasury Regulations have not been followed.

7

33. *First*, the summonses issued in an attempt to harass petitioners and their investors into abandoning their lawful positions with respect to the audits and settle the matter, thus depriving petitioners of their lawful income tax deductions.

34. Prior to issuing IDRs in this matter, the IRS initially attempted to settle with the individual investors of each petitioner and other similarly situated parties. In telephone conversations with the investors, the IRS threatened the imposition of severe penalties if the investors failed to settle. Those calls were made before any notice of audit.

35. When it became clear that petitioners were unwilling to give up their lawful deductions, the IRS embarked on a series of excessively burdensome and overtly harassing tactics. For example, on two separate occasions the IRS threatened one of petitioners' attorneys, Sweta Shah, with sanctions.

36. After months of harassing telephone calls and letters sent by the examining agents, as well as countless IDRs and FDRs, the IRS issued summonses despite that the information requested through these summonses is available to the IRS through standard audit procedures of petitioners. As such, the summonses are another attempt by the IRS to intimidate petitioners to abandon their lawful positions with respect to the audits.

37. *Second*, the summonses issued in an attempt to skirt the more restrictive discovery rules of United States Tax Court.

38. IRS agent Weinger told one of petitioners' attorneys, John E. Rogers, that the auditors were being guided by district counsel who planned to litigate the results of the audit so that the audit was essentially a pre-litigation discovery tool. Mr. Weinger also told Mr. Rogers that it made no difference whether the taxpayer proved bad business debt as part of the

910733v.1

audit because district counsel had already decided to litigate. Other IRS agents have admitted to being "instructed" to issue similar summonses by the U.S. Attorney's Office.

39. Therefore, based on information and belief, the IRS is utilizing its broad summons power in an attempt to obtain records it may not be able to obtain in a tax proceeding when it is bound by the more limiting rules of discovery.

40. *Third*, this investigation is ongoing despite IRS acknowledgment that the transactions at issue are not abusive. For example, auditors admitted (to Mr. Rogers on May 4, 2007) that they considered petitioners' (and those similarly situated) efforts to comply with tax laws "sincere."

41. *Fourth*, the summonses represent an improper attempt by the IRS to extend the statute of limitations to examine petitioners' tax returns.

42. As with the aforementioned FDRs which forced similarly-situated petitioners to file petitions to quash those FDRs and thus extend the relevant statute of limitations despite substantial compliance with audit requests, the government is again forcing an extension of the statute of limitations through the issuance of the summonses. The IRS is continuing this improper practice even following service of petitions objecting to this practice.

### *Relevance*

43. As noted above, this investigation is not being conducted pursuant to a legitimate purpose. Accordingly, the examinations and documents requested *via* the summonses cannot be relevant to a legitimate purpose.

44. However, the documents requested in the summonses are not even relevant to the IRS's stated purpose: an examination of petitioners' tax liabilities.

45. *First*, an examination as to the correctness of petitioners' tax liabilities would necessarily have to include the negotiable paper located in Brazil that is the subject of petitioners' businesses. Much of that negotiable paper has been supplied to the IRS (more than 1.5 million pieces of it), but the IRS remains intent on ignoring that aspect of petitioners' businesses.

46. *Second*, the summonses are overly broad on their face as the first six requests seek "all" documents relating to, among other things, petitioners' anticipated tax benefits, tax advice and general correspondence pertaining to petitioners "and/or [their] activities." *See* Exhibit A.

47. Summonses requesting "all" documents are generally considered to be overly broad. *See, e.g., Racca v. United States*, No. C06-1822RSM, 2007 WL 1108872 (W.D. Wash. Apr. 11, 2007) (IRS sought "all documents" relating to, among other things, the tax income of the taxpayers and the preparation of the financial statements of taxpayers, but the court was "not persuaded that [the IRS had] a realistic expectation that all of the information sought [would] shed light upon the correctness of petitioner's tax liabilities"); *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973) (*all* of the returns and *all* of the work records relating to *all* of the clients for the years under investigation is an overly broad request); *Untied States v. Lewis*, 604 F. Supp. 1169 (E.D. La. 1985) (*all* information which would be necessary to enable a representative of the IRS to properly determine total income earned or sources of funds received for the period is an overly broad request).

48. *Third*, the documents requested are clearly irrelevant to the IRS's purpose of examining petitioners' tax liabilities as the IRS has already made determinations regarding similarly-situated petitioners' tax liabilities. As noted, notwithstanding the existence of litigation

910733v.1

surrounding the summonses, the IRS issued FPAAs to numerous entities around the country, disallowing their lawfully claimed deductions and imposing penalties. The IRS was able to make such a determination without the benefit of the summonses and, presumably, is able to make one with regard to the instant petitioners as well.

### *Documents in the IRS's Possession*

49. Petitioners (collectively, along with petitioners throughout the country), through John E. Rogers by power of attorney, have already provided the IRS with nearly two million pages worth of documents, responsive records, DVDs and CD-ROMs containing vast amounts of information. The cost of complying with the demands of the IRS is nearing one million dollars, not including attorneys' fees and costs associated with defending against the IRS' harassing tactics.

50. Accordingly, much, if not all, of the information sought is already in the IRS's possession. Any doubt about whether the IRS has failed to exclude information already in its possession is resolved by the fact that similarly-situated petitioners submitted numerous responsive documents as exhibits to their briefing in related summons-quashing proceedings (*see* paragraph 11, *supra*). The IRS has failed to exclude such documents from its requests. Petitioners in the FDR proceedings attached responsive documents as well, which the IRS has similarly failed to exclude. (*See* paragraph 11, *supra*.)

51. Furthermore, Rogers has already met with IRS agents on five separate occasions—August 6, 2006, September, 2006, May 5, 2007, August 27, 2007 and September 24, 2007—during which times he responded to IRS questions and produced documents on behalf of petitioners. During one meeting, Rogers also made petitioners' accountant, John Gabel, available for questioning.

52. On information and belief, the Taxpayers have very little—if any—factual knowledge of which the IRS does not have better access to or which petitioners have not already provided to the IRS.

53. In contrast, Rogers has first hand knowledge of the taxpayers business, business practices, bookkeeping methods, accounting practices and the daily operation of the business; he provided factual, reliable information to questions asked by examiners; he timely provided follow-up information for any questions that could not be answered during interviews; and he has a properly executed Form 2848, Power of Attorney and Declaration of Representative.

54. As such, IRS attempts to summon the other taxpayers is in violation of its own Internal Revenue Manual, which states: "the taxpayer's presence will not be mandated as long as the person being interviewed":

> A. has first hand knowledge of the taxpayer's business, business practices, bookkeeping methods, accounting practices and the daily operation of the business;
> B. provides factual, reliable information to questions asked by the examiner;
> C. timely provides follow-up information for any questions that could not be answered at the time of the initial interview; and
> D. has a properly executed Form 2848, Power of Attorney and Declaration of Representative, or Form 8821, Tax Information Authorization from the taxpayer.

I.R.M. 4.11.55.2.1.1(4).

### *Proper Administrate Procedure*

55. The summonses should also be quashed because the administrative steps required by the IRC have not been followed.

56. The service of a third party summons is a third party contact which requires prior notification under the provisions of IRC § 7602. The IRS is required to send a

copy of summons to the taxpayer's designated representative at the same time it served the summons on the third party. Although the IRS has been notified through Power of Attorney form 2848 that petitioners are represented by counsel, e.g. Paul Kozacky, Christopher Saternus and Janessa Griffin, after reasonable inquiry, it appears that counsel were never served with the summonses served on the Taxpayers. The IRS is continuing this improper practice even following service of over twenty petitions objecting to this practice.

57. In response to IRC § 7602, the IRS promulgated IRM § 4.10.1.6.12.2 which states that IRS employees may not contact third parties without first providing reasonable notice that contacts with persons other than the taxpayer may be made.

58. Under Treasury Regulation § 601.506(a), any notice or written communication regarding the taxpayer must also be provided to the taxpayer's representative at the same time. Under 28 U.S.C. § 7609(a)(1), notice of a summons is required to be given within three days of the date on which service is made to a third party. The summonses in this case are dated January 18, 2008 and January 24, 2008. However, as of the filing of this petition, notice to petitioners' counsel has not been given. This is an egregious violation of the IRC and due process. The IRS is continuing this improper practice even following service of petitions objecting to this practice.

59. Under IRM § 25.5.1.4, before issuing a summons, the IRS is required to attempt to obtain information voluntarily from taxpayers and witnesses. Under IRM § 4.10.2.9.3, IRS examiners are instructed not to use a "shot gun" IDR approach and only request documents relevant to the examination.

60. In addition to failing to establish the requisite *Powell* factors, a myriad of reasons exist to quash the IRS summonses.

61. The IRS's actions have already hindered petitioners' ability to conduct business, raise capital and ultimately either sell off or go public with their business. IRS audits are not be permitted to ruin a taxpayer's lawful business.

62. Further, the summonses request information clearly protected by the attorney-client privilege, work product doctrine and tax practitioner privilege.

63. Finally, the summonses and their compliance procedures are unconstitutional on their respective faces and as applied in that they constitute a deprivation of property without due process of law in violation of the fifth amendment, violate separation of power principles entrusting judicial review to article III tribunals and impinge on the right to free speech and to petition the government for redress of grievances in violation of the first amendment.

64. For the forgoing reasons, the summonses should be quashed.

Respectfully submitted,

BLACKBERRY FUND, LLC, RIDGEWAY FUND, LLC, WOODCREEK TRADING, LLC, UMBRAIL FUND, LLC, ZURICHSEE TRADING, LLC, DENT-BLANCHE FUND, LLC AND PLUM GROVE TRADING, LLC

By: __s/*Michael D. Lutgring*____

| | |
|---|---|
| *Pro hac vice application pending:* | Michael D. Lutgring (LA Bar #24531) |
| Paul J. Kozacky (IL ARDC# 6188031) | STONE PIGMAN WALTHER WITTMANN L.L.C. |
| Jerome R. Weitzel (IL ARDC# 6217032) | 301 N. Main St. One American Place, Suite 1150 |
| John M. Sheldon (IL ARDC# 6256666) | Baton Rouge, Louisiana 70825 |
| John N. Rapp (IL ARDC# 6293613) | Telephone: (225) 490-8912 |
| KOZACKY & WEITZEL, P.C. | FACSIMILE: (225) 490-8960 |
| 55 West Monroe Street, 24th Floor | *Local Counsel for Petitioners* |
| Chicago, Illinois 60603 | |
| (312) 696-0900 | |

910733v.1